IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

C.B., *et al.*,

                Plaintiffs,

v.

BOARD OF EDUC. OF CITY OF
CHICAGO, DISTRICT 299, *et al.*,

                Defendants.

No. 20-cv-00586

Judge Franklin U. Valderrama

## MEMORANDUM OPINION AND ORDER

Plaintiff B.B., in her own capacity and as parent of C.B., brings a five-count complaint against the Board of Education of Chicago Public Schools, District 299 (CPS); Elizabeth Wagman (Wagman); and Christine Mock (Mock) (collectively Defendants),[1] R. 60, SAC ¶¶ 6–8,[2] asserting violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, (Count I); Section 504 of the Rehabilitation Act of 1973 (Section 504), 29 U.S.C. § 794, for disability discrimination (Count III) and retaliation for disability-related advocacy (Count IV); and a violation of the Illinois School Student Records Act (ISSRA), 105 ILCS 10/1 *et seq.* (Count V). Plaintiffs also bring claims against Wagman and Mock in their

---

[1]The parties agreed to dismiss the Illinois State Board of Education (ISBE) as a Defendant on April 12, 2021. R. 74.

[2]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

individual capacities for violations of the IDEA and the First Amendment right to free speech, pursuant to 42 U.S.C. § 1983 (Count II). Defendants move to dismiss all five counts pursuant to the Federal Rule of Civil Procedure 12(b)(6). R. 64, Mot. Dismiss at 1. For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

## Background[3]

C.B. is a teenager with a speech/language impairment and specific learning disability who hopes to become an engineer one day. SAC ¶¶ 15, 17, 18. C.B. resides with his mother, B.B., within the boundaries of Chicago Public Schools (CPS). *Id.* ¶¶ 4–5. Due to his impairment and learning disability, C.B. qualifies for special education. *Id.* ¶ 17. As of the filing of the second amended complaint, C.B. attended Gary Comer Middle School (Comer), a charter school for which CPS serves as the special education local education agency. *Id.* ¶ 15. As such, CPS is responsible for convening Individualized Education Program (IEP) meetings, triennial assessments, and eligibility meetings related to C.B. *Id.* ¶ 6.

C.B. began attending CPS schools after moving to Chicago in second grade. SAC ¶ 21. When C.B. reached fourth grade, CPS assessed him and determined that he qualified for special education based on his speech-language impairment and specific learning disability. *Id.* ¶ 22. CPS and B.B. entered an agreement allowing C.B. to attend Cove School (Cove), a disability-segregated, separate day school that focuses on students with specific learning disabilities. *Id.* ¶ 23. Although the

---

[3]The Court accepts as true all of the well-pleaded facts in the SAC and draws all reasonable inferences in favor of Plaintiffs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

agreement did not include a termination date, CPS agreed to provide a "similarly situated" placement for C.B. if Cove became unavailable to him. *Id.* ¶ 24.

C.B. made significant progress during his fifth-grade year. SAC ¶ 25. During C.B.'s sixth-grade year, B.B. began to have significant concerns; at that time, C.B.'s education was governed by an IEP developed on September 23, 2016. *Id.* ¶ 26. B.B. expressed numerous concerns about C.B.'s stagnation in reading as well as his apparent lack of progress towards his IEP goals in spring 2017. *Id.* ¶ 27. Cove responded, in part, by assigning a new social worker to C.B. who introduced more appropriate activities. *Id.* Nevertheless, B.B. found CPS's responses to her concerns inadequate. *Id.*

Also during his sixth grade year, C.B. received racially charged text messages from a white peer who asked if Black people should be called "Nigga?" SAC ¶ 27(g). Instead of disciplining the white student, Cove required C.B. to work with the student and encouraged B.B. to let them be friends and play together. *Id.* When C.B. suggested that his class write about the incident, he was told to discuss it in private with adults only. *Id.* His teacher then confiscated his phone, causing Plaintiffs great stress because C.B. needed, and was permitted to have, immediate access to his mother. *Id.*

In August 2017, during the summer before C.B.'s seventh-grade year, C.B. received a postcard from a teacher who was involved in the previous year's academic and racially charged incidents. SAC ¶ 29. B.B. immediately emailed Cove and requested that C.B. have no further contact with this teacher. *Id.* ¶ 30. She also

suggested Cove's staff read a book called *White Teacher* to better educate themselves on their own biases. *Id.* After briefly corresponding with Cove's director, *id.* ¶¶ 31–33, B.B. learned that Cove gave CPS a 30-day notice of its intention to discontinue C.B.'s enrollment. *Id.* ¶ 34.

In September 2017, despite preparing to "release" C.B., Cove contacted B.B. to schedule C.B.'s 2017 IEP meeting. SAC ¶ 34–36. The deadline for the meeting was September 23, 2017, several days before the end of the 30-day period. *Id.* ¶ 36. Nevertheless, CPS directed Cove not to conduct the meeting or speech-language assessment. *Id.* ¶¶ 38–39. CPS also declined to work with Cove in transitioning C.B. to his next school. *Id.* ¶ 44. While CPS did conduct nursing and psychological assessments, it did not convene an eligibility meeting to discuss them. *Id.* ¶ 42. CPS also conducted C.B.'s required triennial review late. *Id.* ¶ 40.

In response to Cove's release of C.B., B.B. requested that CPS participate in a voluntary mediation to develop an updated IEP; CPS declined. SAC ¶¶ 45–48. B.B. also attempted to enroll C.B. in his school of residence, but CPS blocked the attempt. *Id.* ¶ 52. CPS then suggested several placement options, all of which B.B. found inappropriate and inconsistent with C.B.'s existing IEP. *Id.* ¶ 53. B.B. informed CPS staff that she did not want C.B. to enter a school geared towards students with emotional and behavioral disturbances, rather than learning disabilities. *Id.* ¶ 57. Instead of responding to B.B., CPS sent out two referrals. *Id.* ¶ 58. B.B. spoke with the intake coordinator at one of the referred schools, and they both agreed that the school's program was not appropriate for C.B. *Id.* ¶ 61. In turn, the school advised

CPS that B.B. was upset about receiving an inappropriate referral. *Id.* ¶ 62. Mock stopped all communications with B.B. *Id.* ¶ 63–64. Mock then sent an internal email advising that C.B. needed to be removed from Cove's roster. *Id.* ¶ 66. On February 24, 2018, CPS purported to disenroll C.B. *Id.* ¶ 68.

In October 2018, B.B. requested through counsel that C.B. attend Acacia, a school that was qualified to help students with learning disabilities. SAC ¶ 74. Wagman agreed to consider that placement if and only if B.B. agreed to transport C.B. to and from school. *Id.* ¶ 76. Wagman also offered an alternative school that was located on a bus route but that B.B. found inappropriate. *Id.* Acacia eventually accepted CPS's referral, *id.* ¶ 80, but B.B. did not learn of this referral until after she had already enrolled C.B. at Comer. *Id.* ¶ 84–85. In November 2018, B.B. requested an Independent Educational Evaluation (IEE), which automatically triggered a due process filing. *Id.* ¶¶ 81, 82.

C.B. entered sixth grade at Comer on January 7, 2019. SAC ¶ 86. In response to CPS's direction, Comer did not convene an assessment or IEP meeting. *Id.* ¶¶ 86, 87. C.B. remained at Comer for several weeks but was dismissed on February 20, 2019. *Id.* ¶ 88.[4]

In May 2019, the Parties reached an interim agreement allowing C.B. to return to Comer. SAC ¶ 95. C.B. arrived at Comer on May 7, 2019, but was initially turned away because CPS had not informed Comer of the interim agreement. *Id.* ¶ 96. C.B. was allowed to return later that day. *Id.* ¶ 97. The interim agreement also called for

---

[4]Plaintiffs seek no damages for the time C.B. attended Comer between January 7, 2019 and February 20, 2019. SAC ¶ 94.

prompt assessment and development of an IEP before the start of school. *Id.* CPS finally convened an IEP meeting on October 9, 2019, C.B.'s first since September 23, 2016. *Id.* ¶ 113.

## ISBE Hearing

After a series of continuances and scheduling issues with the Impartial Hearing Officer (IHO), the Illinois State Board of Education (ISBE) conducted a due process hearing in September 2019. SAC ¶¶ 10, 112. The hearing centered on two primary issues: 1) whether the district's psychological evaluation dated September 28, 2017 was inappropriate pursuant to the IDEA, and 2) whether C.B. was provided with a FAPE from December 2016 to December 2018. *See generally* R. 1-1, IHO Order at 4–5. The IHO ruled in favor of CPS on both claims and concluded that "[a]t all times in question, the District has provided the Student with a FAPE." *Id.* at 38. Plaintiffs filed their original complaint on January 25, 2020. *See* R. 9, Complaint. Plaintiffs amended their complaint in May 2020 and again on December 2020. R. 10, 60. The present motion to dismiss the SAC followed. R. 64.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on

its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

### I.     IDEA (Count I)

In Count I, Plaintiffs allege that CPS violated the IDEA and ask the Court to overturn the IHO's decision because the IHO made numerous errors as to facts, law, and mixed questions of fact and law. SAC ¶ 116.

The Individuals with Disabilities Education Act (IDEA) offers States federal funds in exchange for a promise to provide a "free appropriate public education," or FAPE, to children with certain disabilities. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 137 S. Ct. 743, 748 (2017) (citing 20 U.S.C. § 1401(3)(A)(i)). The IDEA requires participating States to provide every eligible child a FAPE, by means of a uniquely tailored "individualized education program," or IEP. 20 U.S.C. §§ 1401(9)(D), 1412(a)(1); *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 137 S. Ct. 988, 994 (2017). The IEP is "the centerpiece of the statute's education delivery system for disabled children." *Id*. (internal quotation marks and citation omitted). *See also Board of Ed. of Hendrick Hudson Central School Dist.*,

*Westchester Cty. v. Rowley*, 458 U.S. 176, 181 (1982) (citing 20 U.S.C. § 1401(18)) (FAPE is tailored to unique needs of eligible child by means of 'individualized educational program' (IEP).”). At the heart of the IEP process is a list of requirements the local educational agency must follow in creating the IEP. *See* 20 U.S.C. § 1414(d). Among these requirements is the mandate that the IEP be prepared by an IEP team that includes at least one special education teacher, an individual qualified to interpret assessments of the child, and the child's parents. 20 U.S.C. § 1414(d)(1)(B). The local educational agency must ensure the IEP team reviews the IEP at least once a year. *Id.* § 1414(d)(4)(A)(i). Additionally, the agency must reevaluate the child at least once every three years, unless the parent and the local educational agency agree that a reevaluation is unnecessary. *Id.* § 1414(a)(2)(B)(ii).

The IDEA further safeguards qualifying students by enabling dissatisfied students or parents to participate in an administrative hearing and judicial process. 20 U.S.C. § 1415. Parties may attempt to resolve their disagreements before an impartial hearing officer (IHO) at an impartial due process hearing. 20 U.S.C. § 1415(f). If any party is "aggrieved" by the IHO's findings and/or decisions, that party may bring a civil action in district court. 20 U.S.C. § 1415(i)(2)(A); *see also Endrew*, 137 S. Ct. at 994; *Navin v. Park Ridge Sch. Dist. No. 64*, 2002 WL 774300, at *3–4 (N.D. Ill. Apr. 29, 2002).

In terms of judicial review of an IHO's decision, the IDEA provides that: "[i]n any action brought under this paragraph, the court—(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a

party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). On issues of law, an IHO is entitled to no deference. *Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. #221*, 375 F.3d 603, 611 (7th Cir. 2004) (citation omitted). However, on issues of fact, the IDEA requires a district court to accord "due weight" to the IHO's decision. *Id.* at 612. The Seventh Circuit has explained that "due weight" differs from case to case and depends on the amount of new evidence presented to the district court. *Id.* (citations omitted). "At one end of the continuum, where the district court does not take new evidence and relies solely on the administrative record, it owes considerable deference to the hearing officer, and may set aside the administrative order only if it is 'strongly convinced that the order is erroneous.'" *Id.* (quoting *School Dist. v. Z.S.*, 295 F.3d 671, 675 (7th Cir. 2002)). On the other end of the continuum, "[t]he more that the district court relies on new evidence . . . the less it should defer to the administrative decision: judicial review is more searching the greater the amount (weighted by significance) of the evidence that the court has but the agency did not have." *Id.* (internal quotation marks and citation omitted).

Defendants argue that Count I should be dismissed because: Plaintiffs have not alleged any errors of law and have not presented any additional evidence that was not before the IHO. Mot. Dismiss at 5–6. Defendants assert that the Court must, accordingly, defer entirely to the IHO's decision. *Id.* The Court disagrees.

Reading the allegations in the SAC in the light most favorable to Plaintiffs, as the Court must, the Court cannot say that Plaintiffs have failed to allege any

questions of law. As Plaintiffs point out, a central claim in this case is that CPS failed to provide C.B. with a FAPE; courts have held that that issue presents a mixed question of law and fact that a court reviews *de novo*. *See* R. 70, Resp. at 6–7 (citing *Board of Educ. of Murphysboro Commun. Unit. Sch. Dist. No. 186 v. G.S.*, 41 F.3d 1162, 1166 (7th Cir. 1994)). *See also Hjortness ex rel. Hjortness v. Neenah Joint Sch. Dist.*, 507 F.3d 1060, 1064 (7th Cir. 2007) (citation omitted) ("Whether a school district has offered a free appropriate public education to a disabled student is a mixed question of law and fact."); *Monticello Sch. Dist. No. 25 v. George L. on Behalf of Brock L.*, 102 F.3d 895, 905 (7th Cir. 1996) (citation omitted) ("Whether a school district has provided a FAPE in the LRE is a mixed question of law and fact, which we review *de novo*."). Significantly, Defendants have failed to respond to Plaintiffs' mixed question of law and fact argument, so they have waived any response. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (citations omitted) ("Failure to respond to an argument . . . results in waiver.").

The Court is likewise unconvinced by Defendants' argument that the Court should dismiss the IDEA count because Plaintiffs have not presented any additional evidence. *See* Mot. Dismiss at 6. As Plaintiffs emphasize, Resp. at 7, discovery has not yet begun. Unlike the typical administrative appeal, which is based entirely on the administrative record without discovery, the IDEA grants the trial court the discretion to hear additional evidence: "the [district] court-- (i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence,

shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). *See Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 270 (7th Cir. 2007) (citation omitted) (district court has discretion to admit additional evidence to supplement the record); *M.L. v. New York City Dep't of Educ.*, 943 F. Supp. 2d 443, 445 (S.D.N.Y. 2013) (IDEA administrative review different from typical administrative review in that some discovery of additional evidence may be permitted). As such, it is possible that Plaintiffs may later move the Court for leave to conduct discovery on their IDEA claim and to supplement the administrative record with additional evidence. *See, e.g.*, *L.S. v. Bd. Of Educ. Of Lansing Sch. Dist. 158*, 2015 WL 3647759 (N.D. Ill. June 11, 2015); *B.H. v. Joliet Sch. Dist. 86*, 2009 WL 1269256 (N.D. Ill. Apr. 30, 2009).

To be clear, the Court is not holding that discovery on Plaintiffs' IDEA claim or the supplementing of the administrative record is warranted in this case. As the court observed in *L.S.*, "district courts are advised not to receive additional evidence beyond the administrative record absent a strong justification for the failure to present such evidence at the administrative level." 2015 WL 3647759, at * 3 (citing *Monticello*, 102 F.3d at 901). At this juncture in the litigation, however, with discovery currently stayed, the Court has not had occasion to decide whether to hear additional evidence in this case. It is possible that some additional evidence may be appropriate pursuant to 20 U.S.C. § 1415, such as "[e]vidence related to a student's progress from the time of the hearing to the time of trial[.]" *L.S.*, 2015 WL 3647759,

at * 9. Until the issue of whether to hear additional evidence is resolved, the lack of additional evidence does not provide a basis for a more deferential standard of review.

In general, the Court is dubious about dismissing Plaintiffs' IDEA count at this juncture. From the Court's review of other IDEA cases, summary judgment appears to be the common vehicle for a district court's review of an IHO's decision. *See, e.g.*, *Z.J. v. Bd. of Educ. of the City of Chicago, Dist. No. 299*, 344 F. Supp. 3d 988, 997 (N.D. Ill. 2018); *Brad K. v. Bd. of Educ. of City of Chicago*, 787 F. Supp. 2d 734, 738 (N.D. Ill. 2011); *James D. v. Bd. of Educ. of Aptakisic-Tripp Cmty. Consol. Sch. Dist. No. 102*, 642 F. Supp. 2d 804, 811 (N.D. Ill. 2009). Indeed, the Seventh Circuit has held that "[c]ross-motions for summary judgment are the standard method for presenting a case to a district court for decision on the record compiled by the administrative tribunal that the court is reviewing." *Dale M. ex rel. Alice M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 237 F.3d 813, 816 (7th Cir. 2001) (citations omitted).

Notably, Defendants fail to direct the Court to any binding (or even in-Circuit) authority indicating a court can dismiss an IDEA count like Plaintiffs' on a motion to dismiss. As a fellow district judge in this Circuit persuasively put it, "[o]verall, the parties have a disagreement about whether the Hearing Officer made the right decision. This case is a review of a decision by an administrative agency. A motion to dismiss is a poor vehicle for resolving this dispute." *Bd. of Educ. of Lake Forest High Sch. Dist. 115 v. Illinois State Bd. of Educ.*, 2020 WL 1467418, at *7 (N.D. Ill. Mar.

26, 2020) (Seeger, J.). Accordingly, the Court denies Defendants' Motion to Dismiss Count I.

The Court now turns to Defendants' motion to dismiss Count II.

## II.　Section 1983 Claims against Wagman and Mock (Count II)

In Count II, Plaintiffs seek to hold Wagman, a former lawyer for CPS, and Mock, a CPS special education administrator, individually liable for "[s]ubstantive and [p]rocedural" violations of the IDEA, as well as for violations of "First Amendment Free Speech Rights pursuant to 42 U.S.C. § 1983[.]" SAC ¶¶ 120–139. Defendants employ a "kitchen sink" approach in moving to dismiss Count II, offering no fewer than six bases for dismissal: (1) Wagman and Mock cannot be individually liable under the IDEA; (2) Section 1983 does not provide relief for IDEA violations; (3) Plaintiffs have no available damages against the individuals in Count II; (4) Plaintiffs fail to state a claim for First Amendment retaliation; (5) (alternatively) some of Plaintiff's allegations are time-barred; and (6) (alternatively) Wagman and Mock are entitled to qualified immunity. Mot. Dismiss at 6–11. While Defendants have thrown a lot at the wall to dismiss Count II, none of their arguments stick, for the reasons that follow.

### a.　Individual Liability under the IDEA

Defendants initially argue that the IDEA does not permit liability against individual actors. Mot. Dismiss at 6 (citing *Moore v. Hamilton Se. Sch. Dist.*, 2013 WL 4607228 (S.D. Ind. Aug. 29, 2013)).

13

In *Moore*, a high school freshman committed suicide following bullying from his classmates and interpersonal issues with his stepfather. 2013 WL 4607228, at *1. The parents filed suit against the school district, asserting multiple claims, including negligence per se for violations of the IDEA and a Section 1983 IDEA claim. *Id.* The plaintiffs brought suit against an assistant principal at the student's school as well. *Id.* The court granted the motion for summary judgment with respect to the IDEA claim against the assistant principal, finding that individuals were not proper defendants under the IDEA. *Id.* at *23. The court reasoned that the commands and funding conditions of the IDEA, including the FAPE requirement, are directed at states and local educational agencies, which are defined by statute. *Id.*

Plaintiffs, in contrast, direct the Court to *Stanek v. St. Charles County, Unit Sch. Dist. #303*, 783 F.3d 634, 643–44 (7th Cir. 2015), for the proposition that individual liability is allowed under the IDEA. Resp. at 11. In *Stanek*, an autistic student and his parents sued a school district and various administrators for failing to provide necessary educational services, bringing claims under Section 1983 for violations of the IDEA, Rehabilitation Act, Americans with Disabilities Act, and Fourteenth Amendment. *Stanek*, 783 F.3d at 638. The defendants moved to dismiss the case, arguing, among other things, that the plaintiffs sued the wrong parties and were trying to litigate claims belonging to the student. *Id.* at 639. The district court largely agreed with the defendants and held, with respect to the individual defendants, that the plaintiffs had no right of action against individual persons. *Id.* The Seventh Circuit affirmed the district court's dismissal of the individual

14

defendants in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and ADA. *Id.* at 644 (citations omitted). However, the Seventh Circuit "dr[ew] the line . . . at the IDEA claims," holding that the IDEA claims against the individual defendants "should have gone forward at this stage." *Id.* The Seventh Circuit reasoned that it had "not found a decision from any circuit holding that individual school employees cannot be personally liable for violating the IDEA." *Id.* (citation omitted). Yet, the Seventh Circuit stopped short of holding that the IDEA *does* impose individual liability, stating: "[w]e offer no opinion on the issue now, because it is relatively undeveloped." *Id.* Defendants emphasize the latter point in their reply brief, arguing "[a]s the law stands now, there is no statutory basis or legal decision in the Seventh Circuit allowing individuals to be personally liable under the IDEA." R. 72, Reply at 4.

Admittedly, the *Stanek* decision presents the Court with a conundrum. On the one hand, the Seventh Circuit reversed the district court for dismissing the plaintiffs' IDEA claims against individual actors. 783 F.3d at 644. On the other, the Seventh Circuit offered no opinion on whether the IDEA authorizes individual liability. *Id.* The Court, therefore, appreciates Defendants' contention that there is no binding law in the Seventh Circuit affirmatively holding that individual liability is available under the IDEA. Even so, the Court cannot disregard the Seventh Circuit's reversal of the district court in *Stanek* for doing exactly what Defendants are asking the Court to do here. *See Paddock Publications, Inc. v. Chicago Trib. Co.*, 103 F.3d 42, 46 (7th Cir. 1996) (holdings of superior courts bind inferior courts even if not thoroughly

15

reasoned); *Miller v. United States*, 868 F.2d 236, 241 (7th Cir. 1989) (citation omitted) (holding "bedrock principle of *stare decisis*" is that "lower courts are bound by the precedential authority of cases rendered by higher courts"); *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) (citation omitted) ("Ordinarily a lower court has no authority to reject a doctrine developed by a higher one."). The Court accordingly declines to dismiss the IDEA claims against Wagman and Mock. The Court would hold differently, however, if it were writing on a clean slate, for the reasons that follow.

As an initial matter, while the caselaw may have been undeveloped in 2015 when *Stanek* was decided,[5] courts across the country have since held that the IDEA does not provide for individual liability. *See, e.g.*, *Hernandez v. Grisham*, 508 F. Supp. 3d 893, 1009–10 (D.N.M. 2020); *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 206 n.18 (E.D.N.Y. 2018); *Killoran on behalf of Killoran v. Westhampton Beach Sch. Dist.*, 2022 WL 866816, at *6 n.8 (E.D.N.Y. Mar. 22, 2022), *cert. denied*, 2022 WL 1451384 (E.D.N.Y. May 9, 2022); *A. A. P. v. Sierra Plumas Joint Unified Sch. Dist.*, 2021 WL 847812, at *8 (E.D. Cal. Mar. 5, 2021); *A.K. v. Westhampton Beach Sch. Dist.*, 2019 WL 4736969, at *13 (E.D.N.Y. Sept. 27, 2019); *Driessen v. Univ. of Miami Sch. of L. Child. & Youth L. Clinic*, 2019 WL 8895219, at *1 (S.D. Fla. Sept. 24, 2019); *Mueller v. Henrico Cnty. Sch. Bd.*, 2019 WL 3860199, at

---

[5]At least two Circuits appeared to have addressed this issue before *Stanek*. *See Bradley v. Arkansas Dep't of Educ.*, 301 F.3d 952, 957 n.6 (8th Cir. 2002) (recovery from state defendants in their individual capacities not available for IDEA claim, observing "the IDEA is devoid of textual support for such an award"); *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 35 (1st Cir. 2006) (interpreting the plain text of the IDEA and holding "no claim for monetary relief can . . . be stated against individual defendants under IDEA").

*4 (E.D. Va. Aug. 16, 2019); *Rutherford v. Fla. Union Free Sch. Dist.*, 2019 WL 1437823, at *41 (S.D.N.Y. Mar. 29, 2019); *D.W. by & through Williams v. Chesterfield Cnty. Sch.*, 2018 WL 3098121, at *8 n.8 (E.D. Va. June 5, 2018), *report and recommendation adopted*, 2018 WL 3097017 (E.D. Va. June 22, 2018); *Crofts v. Issaquah Sch. Dist.*, 2018 WL 1517671 (W.D. Wash. Mar. 28, 2018); *Henry v. Lane*, 2017 WL 1383356, at *6 (W.D. Pa. Apr. 18, 2017).

Moreover, the IDEA is devoid of any textual support of individual liability. For instance, the IDEA authorizes reimbursement of educational expenses "only against the agency, not against any of its officials." *Diaz-Fonseca*, 451 F.3d at 35 (citing 20 U.S.C. § 1412(a)(10)(C)(ii)). "That only the public agency is liable for reimbursement follows naturally from the fact that Congress assigned to the agency the ultimate responsibility for ensuring FAPE." *Id.* (citing 20 U.S.C. §§ 1400(c)(6), 1401(9)(A)). In *Taylor v. Altoona Area School Dist.*, the court similarly reasoned that because the IDEA imposes substantive obligations on the governmental entities receiving federal funds rather than on the individuals employed by those entities, the text of the statute does not support liability against individual actors. *Taylor v. Altoona Area Sch. Dist.*, 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007) (citation omitted) ("Congress does not normally seek to impose liability on individuals when it places conditions on the receipt of federal funds by entities that employ such individuals."). The IDEA's definitions of "local educational agency" and "educational service agency" provide further clarity on the issue, as the IDEA tasks those entities with providing each eligible child with a FAPE, and neither definition—either explicitly or implicitly—

17

refers to individuals. 20 U.S.C. § 1401(5), 1401(19). In addition, Section 1415 of the IDEA, which enables dissatisfied students or parents to participate in an administrative hearing and judicial process explicitly applies to "[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter." *Id.* § 1415(a).

So, if not for *Stanek,* the Court would dismiss the IDEA claims against Wagman and Mock based on the text of the statute and the overwhelming weight of authority finding that the IDEA does not authorize individual liability. *See Eberhart v. United States*, 546 U.S. 12, 19–20 (2005) (lower court took "prudent course" and facilitated higher court's review on an issue by attempting to follow higher court's precedent while expressing its "grave doubts"); *Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir. 1993) ("Ours is a hierarchical judiciary, and judges of inferior courts must carry out decisions they believe mistaken. A district judge who thinks that new evidence or better argument 'refutes' one of our decisions should report his conclusions while applying the existing law of the circuit.").

### b. Section 1983 as Method of Relief for IDEA Claim

Defendants next argue that Plaintiffs are "[t]rying to circumvent the obvious conclusion that there can be no valid claim under the IDEA against the individuals" by "try[ing] to invoke 42 U.S.C. § 1983 to assert an identical claim." Mot. Dismiss at 6. According to Defendants, Section 1983 cannot be used as a method of relief for a statutory violation where providing a Section 1983 remedy would circumvent the remedial scheme contained in the statute. *Id.* at 7 (citing *Rancho Palos Verdes v.*

*Abrams*, 544 U.S. 113, 115 (2005)). Because the IDEA is a "robust statutory scheme" that does not allow for individual liability, reason Defendants, Plaintiffs cannot use Section 1983 to "invent a new claim under the IDEA that does not independently exist." Mot. Dismiss at 7. In response, Plaintiffs assert that, per *Stanek*, the Seventh Circuit "has left open the possibility of imposing individual liability under 42 U.S.C. § 1983 for IDEA violations." Resp. at 11.

*Stanek*, once again, is a roadblock for Defendants. In *Stanek*, the district court concluded that Section 1983 could not be used to enforce the IDEA. 783 F.3d at 643. While acknowledging the circuit split on the issue, the Seventh Circuit characterized the district court's conclusion as "incorrect," stating: "[t]his court . . . has come down on the side of holding that § 1983 can be an avenue for pursuing remedies under IDEA." *Id.* at 643–44 (citing *Marie O. v. Edgar*, 131 F.3d 610, 621–22 (7th Cir. 1997); *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist.* 68, 98 F.3d 989 (7th Cir. 1996)). While the Seventh Circuit stated that *Marie O.* and *Charlie F.* "may need to be revisited in light of *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 125 S. Ct. 1453, 161 L.Ed.2d 316 (2005)," the very case cited by Defendants here, the Seventh Circuit declined to reassess those cases. *Id.* (citations omitted).

In the wake of *Stanek*, district courts in this Circuit have followed the Seventh Circuit's lead. For instance, in *Allison W. v. Oak Park & River Forest High Sch. Dist. #200*, 188 F. Supp. 3d 796 (N.D. Ill. 2016), the defendants similarly moved to dismiss the IDEA claims on the basis that Section 1983 cannot be used to enforce the IDEA. The court looked to *Stanek* and found that it was "of course[,] duty-bound to adhere

19

to Seventh Circuit law," regardless of the circuit split on the issue. *Id.* at 797. In addition, because the Seventh Circuit declined to decide whether the plaintiffs might be able to seek recourse under Section 1983, the court in *Alison W.* declined to do so as well and simply denied the motion to dismiss. "It would . . . violate fundamental jurisprudential principles for this Court to swim against the tide when our Court of Appeals has declined a like invitation." *Id.* Along those same lines in *Nardella v. Leyden High Sch. Dist. 212*, 2016 WL 3418571, at *3 (N.D. Ill. June 22, 2016), the court rejected the defendants' contention that Section 1983 actions are not available to remedy IDEA violations in light of *Stanek* and followed the Seventh Circuit's example by withholding resolution of the Section 1983 question due to the parties' "relatively succinct briefing" on the topic.

Just like the courts in *Allison W.* and *Nardella*, this Court declines to dismiss Plaintiffs' IDEA claims based on the argument that Section 1983 does not provide an avenue for IDEA claims. As it stands, the law of this Circuit is that Section 1983 can be used for IDEA claims, *see Marie O.* and *Stanek*, and until the Seventh Circuit rules otherwise, the Court is duty-bound to follow Seventh Circuit precedent.

### c. No Available Damages

Defendants further attack Plaintiffs' claims against Wagman and Mock by asserting that Plaintiffs "do not allege any recoverable damages against the individuals." Mot. Dismiss at 7. Defendants offer two primary reasons for their position. First, Defendants argue that under the IDEA, "the only allowable form of relief is compensatory education awards and reimbursements for expenses incurred

from the agency." *Id.* (citing *Ibata v. Bd. of Educ. of Edwardsville Cmty. Sch. Dist.*, 2008 U.S. Dist. LEXIS 132519, at *10 (N.D. Ill. Mar. 7, 2008); *Anderson v. Thompson*, 658 F.2d 1205, n.12 (7th Cir. 1981); *Charlie F.*, 98 F.3d 989). Second, Defendants maintain that "[w]here Plaintiffs cannot recover monetary or punitive damages against the individual defendants under the IDEA, they also cannot recover those damages in a § 1983 suit for IDEA violations." *Id.* (citing *Malone v. Ill. State Bd. of Edu.*, 2005 WL 8162706 (C.D. Ill. Sept. 23, 2005); *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 980 F.3d 382, 387 (6th Cir. 1992); *Weyrick v. New Albany-Floyd Cnty. Consol. Sch. Corp.*, 2004 U.S. Dist. LEXIS 26435, *21–23 (S.D. Ind. Dec. 23, 2004)).

Plaintiffs do not address Defendants' authority but offer policy reasons for compensatory damages against individual actors: "Plaintiffs allege that Wagman and Mock disastrously usurped educator roles, excluded parent input, and sabotaged C.B.'s education at Gary Comer. If they prevail, 'fix-it' orders in the form of reimbursement and compensatory education for families, plus attorneys' fees borne by taxpayers, may not suffice: individuals may need personalized deterrents." Resp. at 11.

With respect to relief available under the IDEA, the Court agrees with Defendants that Plaintiffs cannot seek, much less obtain, compensatory or punitive damages against Defendants. The law is clear on that point. *See, e.g.*, *Charlie F.*, 98 F.3d at 991, *abrogated in part on other grounds by Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 ("Charlie says that he wants compensatory money damages, which the IDEA

does not authorize. It does not contain an explicit limit, but the structure of the statute—with its elaborate provision for educational services and payments to those who deliver them—is inconsistent with monetary awards to children and parents."); *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 910–11 (9th Cir. 2020) (citations omitted) ("[IDEA plaintiffs] can pursue injunctive or other prospective relief, including reimbursement for the cost of private education, but not ordinarily monetary damages."); *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 659 (2d Cir. 2020) (citations omitted) ("Although courts may not award damages for violations of the IDEA . . . they may award retrospective and/or prospective equitable relief, including reimbursement of paid expenses or compensatory education."); *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 960 F.3d 1073, 1084 (8th Cir. 2020), *cert. denied sub nom. Indep. Sch. Dist. No. 283 v. E.M. D.H. ex rel. L. H.*, 142 S. Ct. 67, 211 L. Ed. 2d 9 (2021) (citations omitted) ("Although compensatory damages are unavailable through the IDEA, compensatory education is allowed.").

The law is less clear, however, on whether Plaintiffs may be able to obtain damages through Section 1983. *Compare Malone*, 2005 WL 8162706, at *6 (plaintiffs cannot circumvent *Charlie F.* holding by suing under Section 1983), *and Maldonado v. Illinois State Board of Education*, 2003 WL 1713834, at *7 (N.D. Ill. 2003) (same) *with Charnesky v. Shallenberger*, No. 2008 WL 11518032, at *4 (N.D. Ill. Feb. 13, 2008) (citations omitted) (Section 1983 allows an IDEA-related award of money damages where a defendant's violation of a plaintiff's rights causes plaintiff actual injury), *and Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 786 n.14 (2d Cir. 2002)

(citations omitted) ("Although monetary damages are not available under the IDEA itself, a plaintiff may recover monetary damages for a violation of the IDEA pursuant to § 1983."). *See also Weyrick v. New Albany-Floyd County Consol. Sch. Corp.*, 2004 WL 3059793, at *7 (S.D. Ind. Dec. 23, 2004) (permitting IDEA plaintiffs to proceed with Section 1983 claim for monetary damages).

In light of the tension in the law on whether an IDEA plaintiff can obtain monetary damages via Section 1983, the Court cannot conclude at this stage that Plaintiffs are barred from obtaining monetary damages for their Section 1983 claim. *See Bd. of Educ. of Elmhurst Cmty. Unit Sch. Dist. 205 v. Daniel M. ex rel. Michael M.*, 2006 WL 2579679, at *3 (N.D. Ill. Sept. 5, 2006) ("The district court decisions are in tension . . . Unless and until the Seventh Circuit speaks on the issue, this court cannot conclude, at the pleading stage, that as a matter of law Daniel's parents are barred from obtaining damages for their § 1983 claim."). Defendants' "no available damages" argument thus falls short.

### d. First Amendment Retaliation

In addition to their IDEA claim against Wagman and Mock, Plaintiffs seek damages against Wagman and Mock for their alleged violations of B.B.'s first amendment right to free speech. SAC ¶ 13. Plaintiffs allege that Mock and Wagman retaliated against Plaintiffs after B.B. complained about racial discrimination at Cove and criticized CPS's educational programs. *Id.* ¶ 127. According to Plaintiffs, Wagman and Mock's retaliation included: (a) excluding C.B. from school, excluding B.B. from educational planning, harassing Plaintiffs after B.B. secured C.B.'s

attendance at a CPS charter school, *id.* ¶ 13; (b) refusing to make appropriate referrals to schools that focused on remediation of academic and language skills, *id.* ¶ 127; (c) failing to hold an IEP meeting in 2019, *id.* ¶ 135; and (d) disenrolling C.B. from Gary Comer, *id.* ¶ 128.

Defendants contend that Plaintiffs have failed to state a claim for first amendment retaliation because B.B.'s speech did not involve a matter of public concern. Mot. Dismiss at 8. According to Defendants, "[s]peech is only protected by the First Amendment if it is on a matter of public concern." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). While that is true for public employees bringing first amendment retaliation claims, the SAC does not allege that B.B. is a public employee, *see* Resp. at 16, and courts in this Circuit have declined to extend the public concern test to plaintiffs who are not public employees. *See, e.g.*, *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009); *A.J. v. Butler Illinois Sch. Dist. 53*, 2018 WL 1469005, at *8 (N.D. Ill. Mar. 26, 2018); *Nolan v. Vill. of Dolton*, 2011 WL 1548343, at *3 (N.D. Ill. Apr. 21, 2011).

Even if B.B.'s protected speech were limited to matters of public concern, the Court agrees with Plaintiffs, *see* Resp. at 16, that B.B. has plausibly alleged that her comments about educational opportunity and the stigmatizing or maltreatment of black students were matters of public concern. Defendants appear to concede that at least some of B.B.'s speech involved matters of public concern. Specifically, Defendants do not argue that B.B.'s general complaints about racial discrimination at the Cove school failed to involve a public concern. Instead, Defendants insist that

those complaints are time-barred due to Section 1983's two-year statute of limitations. Mot. Dismiss at 8. Defendants aver that because C.B. attended Cove in 2015 and disenrolled in September 2017, Plaintiffs cannot rely on those statements to support a First Amendment retaliation claim. *Id.* at 9.

A plaintiff can plead herself out of court on a statute of limitation basis if the face of the complaint reveals that the claim is time-barred. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010). *See also Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005) (citations omitted) ("Although the statute of limitations is ordinarily an affirmative defense that must be pleaded under Fed. R. Civ. P. 8(c), a district court may dismiss under Rule 12(b)(6) something that is indisputably time-barred[.]"). Claims brought under Section 1983 are governed by the statute of limitations for personal-injury claims in the state where the plaintiff's injury occurred. *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006). Pursuant to 735 ILCS 5/13-202, the Illinois statute of limitations for personal-injury actions is two years from when the cause of action accrued. *Neita v. City of Chicago*, 830 F.3d 494, 498 (7th Cir. 2016); *see also Lewis v. City of Chi.*, 914 F.3d 472, 478 (7th Cir. 2019).

Defendants insist that because Plaintiffs failed to respond to their argument (that B.B.'s general complaints about racial discrimination cannot be relied on to support a First Amendment retaliation claim), Plaintiffs have waived the argument. Reply at 6. While the Court agrees that a party waives an argument when it fails to respond, Plaintiffs' waiver does not result in an automatic victory for Defendants. The Court still needs to ensure that Defendants' argument is right on the law. Put another

way, the Court will not dismiss the SAC on a limitations basis merely on the Defendants' say-so.

Defendants urge the Court to dismiss the first amendment retaliation claim because B.B. complained about racial discrimination at Cove before January 25, 2018 (two years before Plaintiffs filed their original complaint). Mot. Dismiss at 8–9. However, first amendment retaliation claims accrue when the retaliatory act occurred, not when the protected speech was made. *See Towne v. Donnelly*, --- F. 4th ----, 2022 WL 3274098, at *3 (7th Cir. 2022) (internal quotation marks and citations omitted) ("In the context of a First Amendment retaliation claim, we have held that, generally, the statute of limitations clock begins to run immediately after the retaliatory act occurred, so long as the plaintiff knows or should know that [her] constitutional rights have been violated[.]"). Consequently, Defendants have directed the Court to the wrong starting point for its limitations analysis.

Drawing all reasonable inferences from the SAC in Plaintiffs' favor, as the Court must, the SAC alleges various retaliatory acts by Wagman and Mock occurring after January 25, 2018, including but not limited to: purporting to disenroll C.B. in February 2018; causing Gary Comer to disenroll C.B. in February 2019; and refusing to assess C.B. or hold an IEP meeting throughout early 2019. SAC ¶¶ 128, 132, 135. The Court therefore cannot say that Plaintiffs' first amendment retaliation claims are "indisputably time-barred." *Small*, 398 F.3d at 898. As such, the Court will not dismiss Count II on a limitations basis.

### e. Statute of Limitations

Defendants perfunctorily argue, in the alternative, that because Plaintiffs filed their original complaint on January 25, 2020, any conduct occurring before January 25, 2018 is time-barred, including "claims Wagman and Mock failed to conduct an IEP meeting by September 2017 and refused to make school referrals in 2017 and afterwards." Mot. Dismiss. at 9. Plaintiffs failed to respond to this argument too, and thus have waived their response. *See Bonte*, 624 F.3d at 466. Yet, as stated above, the Court will not dismiss a count on limitations grounds unless it is clear from the face of the complaint that the count is time-barred. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (citation omitted) (dismissal based on affirmative defense is permissible only if the complaint "admits all the ingredients of an impenetrable defense").

Here, the Court cannot say that the SAC's allegations make Defendants' limitations defense "impenetrable." In particular, the SAC's allegations regarding CPS's continuous refusal to hold an IEP meeting or make school referrals raises the possibility of a continuing violation, which would permit Plaintiffs to pursue a claim that began outside the limitations period. *See generally Macklin v. United States*, 300 F.3d 814, 824 (7th Cir. 2002). In *Weyrick*, a case cited by Defendants, the court declined to dismiss a plaintiff's claims with regard to his secondary education as untimely because the court found there may be a continuing violation: "IDEA duties . . . are ongoing. Evaluation, case conferences, and IEP development are required at a minimum annually, and more frequently if needed. Thus, plaintiffs' allegations of .

. . years of continuous inaction with respect to [the student's] disability might support a finding of a continuing violation." *Weyrick*, 2004 WL 3059793, at *14. Like the court in *Weyrick*, this Court "expresses no opinion as to whether plaintiffs could establish at later stages of litigation that the circumstances triggering the continuing violation doctrine exist in fact." *Id.* But, "[t]he fact that the case is here on a Rule 12(b)(6) motion to dismiss is critical," and Plaintiffs "are not required to plead the timeliness of their suit." *Id.* (citations omitted). The Court therefore rejects Defendants' alternative limitations argument.

### f. Qualified Immunity

Defendants' final argument with respect to Count II, also in the alternative, is that Count II should be dismissed because Wagman and Mock are entitled to qualified immunity. Mot. Dismiss at 9–11.

"State officials who occupy positions with discretionary or policymaking authority and are acting in their official capacity may have qualified immunity for claims alleging that the state officials violated the constitutional rights of a plaintiff." *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (citations omitted). Such officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (internal quotation marks and citations omitted).

Courts must take great care when evaluating qualified immunity at the pleadings stage. In one respect, because qualified immunity "is designed to protect defendants from the burden of suit, as well as the burden of liability," the question of

qualified immunity "should be resolved as promptly as possible." *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). At the same time, "dismissing a § 1983 suit at [the motion to dismiss] stage on qualified immunity grounds is a delicate matter because the federal rules do not require a plaintiff to anticipate a qualified immunity defense and allege every fact needed to defeat it in the complaint." *Brown v. City of Chicago*, --- F. Supp. 3d ----, 2022 WL 865796, at *11 (N.D. Ill. Mar. 23, 2022) (internal quotation marks and citations omitted). As the Seventh Circuit recently held, a complaint "may be dismissed under Rule 12(b)(6) on qualified immunity grounds where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred." *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (internal quotation marks and citations omitted). In *Hanson*, the Seventh Circuit reiterated that a public official "is entitled to dismissal unless (1) the plaintiffs adequately alleged facts that, if true, would constitute a violation of a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful." *Id.* (citation omitted).

Defendants posit that Plaintiffs have failed to sufficiently allege a claim for violation of the IDEA or first amendment against Wagman and Mock, and that even if there were a statutory violation, "Plaintiffs are unable to point to any authority to put Wagman and Mock on notice that their actions violated a clearly established law" because Plaintiffs fail to direct the Court to a factually similar case. *Id.* at 10 (citing *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008)). Plaintiffs counter that qualified

immunity does not apply because the violation in this case was "so clear that a government official would have known that his actions violated the plaintiff's rights in the absence of a factually similar case." Resp. at 12 (citing *Lee*, 533 F.3d at 512).[6]

Because the Court has already held that Plaintiffs have plausibly alleged an IDEA claim against Wagman and Mock (in light of *Stanek*),[7] the first prong for overcoming the qualified immunity test is satisfied, and the Court turns to assessing whether those rights were "clearly established" at the time of the alleged violation, such that a reasonable public official would have known her conduct was unlawful. *Hanson*, 967 F.3d at 590. "Critically, [the Court] approach[es] this question by taking the plaintiffs' well-pleaded allegations as true." *Id.* at 596.

Contrary to Defendants' argument, *see* Mot. Dismiss at 10, Plaintiffs direct the Court to cases involving IDEA-related procedural violations similar to the ones Plaintiffs allege here. *See, e.g.*, Resp. at 12 n.7 (citing *S.H. v. Mount Diablo Unif. Sch. Dist.*, 263 F. Supp. 3d 746 (N.D. Cal. 2017) (school denied FAPE by failing to complete full IEP)). The SAC also plausibly alleges that Mock and Wagman violated rights that were "clearly established," including the right to a FAPE, 34 C.F.R. § 300.101; § 300.111. Resp. at 8; SAC ¶¶ 135, 138. Plaintiffs have accordingly done enough to hold qualified immunity at bay, for now. *See Hanson*, 967 F.3d at 597 (internal quotation marks and citation omitted) ("[Q]ualified immunity warrants dismissal at

---

[6]As noted below, Plaintiffs further direct the Court to cases they deem analogous to the allegations in the SAC. *Id.* at 12 n.7 (collecting cases).

[7]Defendants do not argue that the law is not "clearly established" for first amendment retaliation claims like Plaintiffs', so the Court does not address qualified immunity with respect to that claim against Wagman and Mock.

the 12(b)(6) stage only when the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred.").

Rather than address Plaintiffs' submitted analogous authority, Defendants maintain that Wagman and Mock's actions were "reasonable in light of the circumstances," and argue that Plaintiffs' allegations are "insufficient to establish either Mock (a special education administrator) or Wagman (a Board attorney) were decision makers subjecting either to individual liability." Reply at 8, 9.[8] Discovery may show that Defendants are correct on both accounts. For now, at the pleadings stage, it is too early to tell. *See Stanek*, 783 F.3d at 644 (citing *Kiddy–Brown v. Blagojevich*, 408 F.3d 346, 357 (7th Cir. 2005) ("It was [] premature to dispense with the [plaintiffs]' § 1983 claims on qualified-immunity grounds with such an undeveloped record."); *Hitzke as next friend of Hitzke v. Vill. of Mundelein*, 524 F. Supp. 3d 822, 830–31 (N.D. Ill. 2021) (qualified immunity could not be resolved on motion to dismiss where fact issues existed to the reasonableness of defendants' conduct and where discovery could show that the defendants' violation of plaintiff's rights was so egregious and unreasonable that no reasonable defendant could have thought he was acting lawfully).

---

[8] Defendants also appear to cite *Benson* for the proposition that constitutional rules requiring the balancing of competing interests can rarely be considered "clearly established." Mot. Dismiss at 10 (citing *Benson v. Allphin*, 786 F.2d 268, 276 (7th Cir. 1986)). Even if *Benson* were still good law and stood for that proposition, Defendants have not explained how the IDEA violations they are asserting qualified immunity over involve such a balancing of interests, so the argument misses the mark.

Defendants have failed, at this point, to persuade the Court that qualified immunity applies. The Court, thus, denies Defendants' Motion to Dismiss Count II. Defendants are not precluded, however, from moving again for qualified immunity at a later juncture.

### III. Section 504 Disability-Based Discrimination Claim (Count III)

In Count III, Plaintiffs assert that CPS failed to meet C.B.'s educational needs as adequately as CPS meets the needs of its students without disabilities. SAC ¶ 143. More specifically, Plaintiffs contend that, in contrast to how CPS treats nondisabled students, CPS discriminated against C.B. by failing to provide C.B. with goals or instruction in science and social studies, forcing C.B. to miss more than a year of school, forcing C.B. into environments dominated by peers with emotional and behavioral disabilities, refusing to let C.B. enroll at his school of residence, and taking no action to ensure C.B. was in school or receiving instruction. *Id.* ¶¶ 144–147.

Defendants move to dismiss count III, for two main reasons.[9] First, Defendants assert that "[w]here a Section 504 claim is based on the theory of denial of FAPE under the IDEA and a plaintiff fails to meet her burden under the IDEA, the Section 504 claim also fails." Mot. Dismiss at 12. Alternatively, Defendants contend that Plaintiffs have failed to allege that C.B. was excluded from an educational program or position that he was otherwise qualified for because of his disability, or that CPS acted with bad faith or gross misjudgment. *Id.* at 13. Because the Court has not

---

[9]Defendants also argue that Count III is time-barred. Mot. Dismiss at 12. Because the Court agrees that Plaintiffs have failed to state a claim for Section 504 discrimination, the Court does not reach Defendants' limitations argument.

dismissed Plaintiffs' IDEA claim, Defendants' first argument fails. To weigh Defendants' second argument, the Court assesses whether Plaintiffs have properly pled the elements of a Section 504 claim.

The Rehabilitation Act specifically prohibits federally funded organizations from discriminating on the basis of disability. *Wis. Community Services v. City of Milwaukee,* 465 F.3d 737, 746 (7th Cir. 2006). To state a claim under the Rehabilitation Act, a plaintiff must allege that: 1) he is a qualified individual with a disability; 2) he was denied the benefits of the "services, programs, or activities of a public entity"; and 3) he was denied those benefits or otherwise discriminated against on account of his disability. *Clemons v. Dart*, 168 F. Supp. 3d. 1060, 1065 (N.D. Ill 2016). Defendants do not dispute that Plaintiffs have met the first element.

Instead, Defendants contest the second and third elements, asserting that Plaintiffs have failed to allege that C.B. was excluded from an educational program or activity because of his disability. Mot. Dismiss at 13. Defendants rely on *B.H. v. Joliet*, 2010 WL 1177447 (N.D. Ill. Mar. 19, 2010) to support their contention. Plaintiffs retort that the Seventh Circuit's decision in *CTL v. Ashland Sch. Dist.*, 743 F.3d 524, 529 (7th Cir. 2014) superseded *B.H.* Resp. at 14.

In *B.H.*, a student and parent brought suit against a school district pursuant to Section 504 of the Rehabilitation Act and the IDEA. 2010 WL 1177447, at *1. The district moved for summary judgment on the plaintiffs' Section 504 discrimination count. *Id.* at *10. The court in *B.H.* set out the standard for a Section 504 discrimination case in the IDEA context, holding: "[E]ven where a disabled student

plaintiff shows that a defendant school district violated the IDEA, there is a separate and higher standard the plaintiff must meet to demonstrate a violation of Section 504." *Id.* The court elaborated that "'[s]omething more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities; i.e., a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment.'" *Id.* (quoting *Tammy S. v. Reedsburg Sch. Dist.*, 302 F. Supp. 2d 959, 982 (W.D. Wis. 2003)). The court therefore granted summary judgment for the district on the plaintiffs' Section 504 count because there was no evidence in the record that the district's conduct was done "with discriminatory animus, bad faith, or gross misjudgment." *Id.* at *11 (internal quotation marks and citation omitted).

Consistent with the holdings in *B.H.* and *Tammy S.*, several courts have found that a Section 504 discrimination claim requires more than a mere IDEA violation; it requires a demonstration of bad faith or gross misjudgment. *See, e.g.*, *M.Y., ex rel., J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008); *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 528–29 (4th Cir. 1998); *Cianciotto on behalf of D.S. v. New York City Dep't of Educ.*, --- F. Supp. 3d ----, 2022 WL 1204788, at *17 (S.D.N.Y. Apr. 22, 2022); *P.C. v. Oceanside Union Free Sch. Dist.*, 818 F. Supp. 2d 516, 533 (E.D.N.Y. 2011). *See also Beth B. v. Van Clay*, 211 F. Supp. 2d 1020, 1035 (N.D. Ill. 2001), *aff'd*, 282 F.3d 493 (7th Cir. 2002) (internal quotation marks and citations omitted) ("It is not enough to show that the district made an improper placement, or that the attempted accommodations proved inadequate.

34

These are not educational malpractice claims. There must be gross misjudgment or bad faith on the part of school officials.").

In *CTL*, a diabetic student and his parents brought suit against his former public school district for discriminating against him on the basis of his disability in violation of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. 743 F.3d at 525–27. The district court granted summary judgment in favor of the school district. *Id.* at 527. On appeal, the plaintiffs implied that any individualized Section 504 plan violation is sufficient for a claim of disability discrimination under Section 504. *Id.* at 529. In evaluating the plaintiffs' argument, the Seventh Circuit reviewed cases holding that the mere denial of a FAPE did not automatically establish a violation of Section 504. *Id.* (citing *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1246 (10th Cir. 2009); *Mark H v. Lemahieu*, 513 F.3d 922, 936 (9th Cir. 2008)). The Seventh Circuit therefore held "for 504 plan violations to constitute disability discrimination, they must be significant enough to effectively deny a disabled child the benefit of a public education." *Id.* at 529–30 (citation omitted). Applying that standard, the Seventh Circuit ultimately concluded that the school district did not fail to reasonably accommodate the student's diabetes because the student regularly attended school, performed well, and suffered no adverse health consequences at school. *Id.* at 530. At most, reasoned the Seventh Circuit, the district's failure to train two additional staff members as diabetes personnel was "a minor violation of the 504 plan" which "in no way made [the student] unsafe or denied him the benefit of a public education." *Id.* The Seventh Circuit

additionally found that there was not enough evidence for a jury to conclude that the school intentionally discriminated against the student, so the court affirmed the district court's grant of summary judgment. *Id.* at 531.

The Court agrees with Defendants that *CTL* did not overrule or supersede the holding in *B.H. See* Reply at 10. The Seventh Circuit in *CTL* was assessing the plaintiffs' Section 504 discrimination evidence in the context of a Section 504 plan and was answering the narrow question of whether the violation of a Section 504 plan alone inevitably established a Section 504 discrimination claim. The Seventh Circuit responded in the negative and went on to assess whether the violation of the Section 504 violation in that case was significant enough to effectively deny the disabled child the benefit of a public education. The Seventh Circuit in *CTL* did not address the issue of bad faith or gross misjudgment, as did the courts in *B.H.* and *Tammy S.* Thus, Defendants are correct that Plaintiffs' discussion of *CTL* is a red herring. Reply at 10.[10]

Applying the principles of *B.H.* and *Tammy S.* here, the Court finds that the SAC fails to allege bad faith or gross misjudgment. Instead, Plaintiffs merely regurgitate their IDEA allegations and offer boilerplate, conclusory allegations. *See, e.g.*, SAC ¶ 150. Indeed, as previously asserted in their IDEA claim, Plaintiffs allege that CPS: failed to provide C.B. with science and social studies instruction, *see* SAC

---

[10]Even if *CTL* had removed the need for Plaintiffs to plead bad faith or gross misjudgment, *CTL* certainly did not hold that Plaintiffs could bypass the need to plausibly allege intentional discrimination. The SAC offers a solitary boilerplate statement that Defendants "discriminat[ed] against Plaintiffs on the basis of C.B.'s disabilities." SAC ¶ 150. That lone statement is insufficient to plead intentional discrimination for Plaintiffs' Section 504 claim.

¶ 115; forced C.B. to miss more than a year of school, *see generally* SAC; prohibited C.B. from attending his school of residence, *see id.* ¶ 52; made no efforts to ensure that C.B. was in school, *see id.* ¶ 115(e)(v); and failed to update his IEP, *see, e.g.*, *id.* ¶ 115(c)(v), (f), (h), (iv). Although the complaint need not use the term FAPE for the Court to find they are seeking relief for a denial of a free appropriate public education, *Fry*, 137 S. Ct. at 755, here, Plaintiffs do explicitly assert that CPS violated Section 504 "by denying a free appropriate public education pursuant to Section 504." SAC ¶ 150. But as *B.H.* and *Tammy S.* instruct, pleading the mere denial of a FAPE is not enough to plausibly allege a Section 504 discrimination claim.

Because Plaintiffs have not plausibly alleged that Defendants acted in bad faith or with gross misjudgment, nor that C.B. was discriminated against on account of his disability, the Court grants Defendants' Motion to Dismiss Count III.

## IV. Section 504 Claim for Retaliation for Disability-Related Advocacy (Count IV)

In Count IV, Plaintiffs assert that CPS retaliated against Plaintiffs by: "stonewalling" B.B., SAC ¶ 157; failing to convene an IEP meeting due to "staffers' irritation with B.B.," *id.* ¶ 156(e); and rejecting help from Cove School because of B.B.'s response to racially charged incidents that occurred while C.B. attended Cove, *id.* ¶ 156(f).

"Section 504 requires schools to accommodate a student's disability, provide students with disabilities with equal opportunities to participate in extracurricular activities, account for disabilities when imposing disciplinary measures, and prohibits retaliation against students who request accommodations." *Thurmon v.*

*Mount Carmel High Sch.*, 191 F. Supp. 3d 894, 898 (N.D. Ill. 2016). To assert a claim for retaliation under Section 504, the plaintiff must allege: 1) a statutorily protected activity, 2) an adverse action, and 3) a causal connection between the two. *Id.* at 899 (citations omitted). A materially adverse action is one that would dissuade a reasonable person from engaging in protected activity. *See Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018).

Defendants urge the Court to dismiss Count IV, positing that Plaintiffs have not alleged any facts to show they suffered a materially adverse action, and also, that Plaintiffs have failed to plead causation. Mot. Dismiss at 14.[11]

**a. Materially Adverse Action**

Defendants claim that the actions Plaintiffs suffered here were "mere slights" rather than materially adverse actions and, thus, cannot support a retaliation claim. Mot. Dismiss at 14. Plaintiffs respond that the Seventh Circuit has allowed similar claims to proceed in the past. Resp. at 14–15 (citing *Stanek*, 783 F.3d at 643; *Mosely v. Board of Educ. of the City of Chicago*, 434 F.3d 527, 534 (7th Cir. 2006)). Defendants reply by asserting (incorrectly) that Plaintiffs "rely exclusively on *Mosely*," while making no attempt to distinguish *Stanek*. Reply at 12. Defendants moreover insist that *Mosely* is "easily distinguishable" because the parent in that case suffered a

---

[11]Defendants state that many of the SAC's alleged adverse actions are time-barred without developing that assertion. *See* Mot. Dismiss at 12, 14. As explained above, the Court cannot say that the SAC's allegations provide Defendants with an impenetrable limitations defense. Defendants' contention therefore falls flat. Plaintiffs additionally allege facts regarding retaliation occurring after January 24, 2018, which support their Section 504 retaliation claim.

significant change in her status as chairperson, an action Defendants claim easily qualifies as an adverse act. *Id.*

The Court disagrees with Defendants' reading of *Mosely*. The parent in *Mosely*, like B.B. here, claimed that the district caused the parent to suffer a "freeze-out," whereby the parent was not allowed to participate in her role as a chairperson and was deprived of important information regarding the school's budget proposals. 434 F.3d at 534. So too here, Plaintiffs specifically allege that B.B. suffered such a "freeze-out," in which she was excluded from educational planning for her son. Resp. at 15; *see also* SAC ¶ 157.

Similarly, in *Stanek*, the parent plaintiffs alleged that the school "froze them out" after they requested accommodations for their child's disability. 783 F.3d at 643. The Seventh Circuit held that the parents' allegation of a "freeze-out" sufficed at the pleadings stage. *See id.* (citing *Mosely*, 434 F.3d at 533–34) ("[Parents] do not catalog in their complaint the adverse actions taken against [child] as a result of their requests, but they do allege that the school froze them out after their requests. This is enough.").

Defendants argue that the freeze-out cannot be considered here because B.B. was the one who engaged in disability-related advocacy, while C.B. suffered the freeze-out. Reply at 13. Defendants miss the point. Plaintiffs are not arguing that the freeze-out only happened to C.B. Rather, Plaintiffs repeatedly allege that CPS stopped returning B.B.'s calls, thereby freezing her out of the decision-making process regarding C.B.'s education. *See* SAC ¶¶ 64, 115(e)(iv). The Court consequently finds,

39

in light of *Mosely* and *Stanek*, that Plaintiffs have adequately pled a materially adverse action.

### b. Causation

Defendants next maintain that Plaintiffs have failed to plead causation, asserting that Plaintiffs' allegations contain only legal conclusions. Mot. Dismiss at 11. Plaintiffs respond that they have alleged a long history of irritation and retaliation. Resp. at 15 (citing SAC ¶¶ 8, 14, 23, 38, 53, 62–64, 66–67, 76, 115(e), 115(g), 122–37). Plaintiffs further contend that it is a factual assertion, not a legal conclusion, to claim that retaliation was the cause of several of CPS's actions. *Id.*

Neither party cites case law on the pleading requirements for the causation element of a Section 504 retaliation claim. In analogous contexts, however, courts have considered whether plaintiffs have alleged some "retaliatory motive" connecting the protected activity and adverse action. *See Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 960 (N.D. Ill. 2017), *aff'd*, 933 F.3d 849 (7th Cir. 2019) (looking for retaliatory motive allegation in connection with Title IX retaliation claim); *Cardenas v. First Midwest Bank*, 114 F. Supp. 3d 585, 591 (N.D. Ill. 2015) (discussing motive for state law retaliatory discharge claim but acknowledging issue of employer's true not suitable for Rule 12(b)(6) resolution). The Seventh Circuit has also considered circumstantial evidence of causation, usually at the summary judgment stage, such as suspicious timing, ambiguous oral or written statements, behavior towards other individuals who are part of a protected group, and other actions. *Milligan v. Bd. of*

*Trs.*, 686 F.3d 378, 388–89 (7th Cir. 2012) (discussing causation element for Title VII and Title IX retaliation claims).

Here, Plaintiffs allege a retaliatory motive, asserting that Defendants were irritated with B.B. for her advocacy. SAC ¶ 124. Moreover, Plaintiffs point to some suspicious timing in the SAC, including CPS directing Cove not to conduct C.B.'s IEP meeting shortly after B.B. complained about racial bias at Cove, followed by CPS's refusal to participate in mediation with Plaintiffs. *See, e.g.*, *id.* ¶¶ 30, 48, 68. Plaintiffs also explicitly allege that CPS cut off contact with B.B. because she rejected a school referral she believed was inappropriate for C.B. *Id.* ¶ 115(e)(iv). Additionally, after providing a detailed history of B.B.'s interactions with CPS and its employees, Plaintiffs assert that Defendants responded to B.B.'s advocacy by disenrolling C.B. from CPS, *id.* ¶ 132, and retaliated against her "because they were irritated with B.B.'s complaints about racial discrimination at Cove and about her criticisms of educational programs." *Id.* ¶¶ 127, 152. Based on Plaintiffs' assertion of suspicious timing and multiple references to a retaliatory motive, the Court finds that Plaintiffs have done enough at the pleadings stage with respect to causation.

Because Plaintiffs have properly alleged all three elements of Section 504 retaliation, the Court denies Defendants' Motion to Dismiss Count IV.

## V. ISSRA Claim (Count V)

In Count V**,** Plaintiffs allege that Defendants violated the Illinois School Student Records Act (ISSRA), 105 ILCS 10/1 *et seq.* by failing to provide Plaintiffs with a full and complete copy of C.B.'s student records. SAC ¶ 163. Defendants move

to dismiss this claim based solely on the assumption that the Court will also dismiss all of Plaintiffs' federal claims. *See* Mot. Dismiss at 15. Defendants reason that because all of Plaintiffs' federal claims fail, the Court must relinquish supplemental jurisdiction over Plaintiffs' ISSRA state law claim. *Id.* (citing 28 U.S.C. § 1367).

The Court has not dismissed all of Plaintiffs' federal claims, so it retains supplemental jurisdiction over Plaintiffs' ISSRA state law claim. *See* 28 U.S.C. § 1367(a). Accordingly, the Court denies Defendants' Motion to Dismiss Count V.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' Motion to Dismiss Counts I, II, IV, and V is denied. Defendants' Motion to Dismiss Count III is granted, and Count III is dismissed with prejudice because any amendment would be futile. *See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017). Defendants shall answer the SAC on or before September 16, 2022.

Dated: August 26, 2022

United States District Judge
Franklin U. Valderrama